# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES WELDING, INC., a Foreign Corporation; | Case No.: CV 08-544-E-REB |
| Plaintiff/Counterdefendant, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| BATTELLE ENERGY ALLIANCE, LLC, a Foreign Limited Liability Company; | |
| Defendant/Counterclaimant | |

Currently before the Court is Defendant's Motion for Partial Summary Judgment (Docket No. 22). Defendant seeks dismissal of all of Plaintiff's non-contract claims and judgment in its favor on two of its breach of contract counterclaims against Plaintiff.

Both parties have consented to proceed for a United States Magistrate Judge. (Docket No. 12). The Court has carefully reviewed the record; considered the oral argument of counsel; and now enters the following Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from a prior business relationship between Plaintiff/Counterdefendant, United States Welding, Inc. ("USW"), and Defendant/Counterclaimant, Battelle Energy Alliance, LLC ("Battelle") regarding the supply of compressed gas cylinders ("cylinders") to the Idaho National Laboratory ("INL"). The parties' contract is reflected in the original Blanket Purchase Order Number 0021573, including Attachments A and B ("BPO") and subsequent Amendments thereto. *See Affidavit of Aron Derbidge,* Exs. A- H (Docket Nos. 22-3 - 22-11).

**MEMORANDUM DECISION AND ORDER - 1**

The original parties to the BPO were USW and Bechtel BWXT Idaho, LLC ("Bechtel").

Pursuant to the BPO, USW was required, *inter alia*, to furnish Bechtel, and later its INL contract

successor, Battelle, with day-to-day compressed gas requirements, in accordance with a price

and delivery schedule.  BPO, ¶¶ 1.1, 6.2 (Docket No. 22-4).  The Contractor (Bechtel and later

Battelle) would issue a release order, indicating the amount of each type of gas required.  *Id.* at

¶ 6.2.  USW was then required to deliver the products identified in the release within five, ten, or

thirty days, depending upon the type of gas ordered.  *Id.*

USW was also charged with the responsibility of maintaining adequate inventory to meet

the Contractor's requirements.  "It is the Subcontractor's responsibility to maintain adequate

inventory to meet the delivery requirements of the Subcontract.  If the subcontractor fails to do

so, the Contractor reserves the right to procure the item from another source."  *Id.* at ¶ 6.9.

It is undisputed that the BPO allowed USW to provide the compressed gas in either USW

cylinders or in cylinders owned by the United States Department of Energy ("DOE").

*Memorandum in Support of Motion for Summary Judgment*, p. 11 (Docket No. 22-1).  When

USW provided compressed gas in its own cylinders, it was permitted to charge rent or

demurrage for the use of the cylinders.  *Id.*  USW was not permitted to charge rent for DOE

cylinders.  *Id.*  It is undisputed that USW was required to fill all orders with DOE cylinders first

before using its own cylinders.  *Id.* at pp. 11-12; *Plaintiff's Statement of Facts*, ¶ 3(f) (Docket

No. 27).

The BPO provided that it would be in effect for one year, commencing on August 1, 2003

and expiring on July 31, 2004.  *BPO*, ¶ 6.1 (Docket No. 22-4).  The BPO allowed the parties to

extend the agreement for two one-year periods, from August 1, 2004 through July 31, 2005 and from August 1, 2005 through July 31, 2006. *Id.*

In July 2004, USW and Bechtel entered into Amendment No. 1 of the BPO. *See Derbidge Affidavit*, Ex. B (Docket No. 22-5). Amendment No. 1 extended the period of performance under the BPO from August 1, 2004 through July 31, 2005 and provided that the BPO may be assigned to a successor contractor at the INL facility. *Id.*

Sometime in 2005, Battelle was awarded the government contract to oversee the INL. In August 2005, Bechtel's rights and obligations under the BPO were assigned to Battelle in Amendment No. 3 to the BPO, effective February 1, 2005. *Derbidge Affidavit*, Ex. D (docket No. 22-7). Amendment No. 3 states that "all other terms [of the BPO] remain in full force and effect." *Id.*

In January of 2006, the parties entered into a separate agreement, Contract No. 0051296, to address accounting and tracking issues related to USW-owned cylinders. *Derbidge Affidavit*, Ex. E (Docket No. 22-8). In this agreement, Battelle agreed to reimburse USW for the replacement costs associated with 144 unaccounted for gas cylinders for which USW was charging rent. *Id.* USW had records of the cylinders being delivered but not returned. *Sandra Sargent Deposition,* Ex. SS2 (Docket No. 29). After performing an extensive inventory in search of the cylinders, Battelle determined that it was paying demurrage charges on 144 missing cylinders that it concluded "INL either excessed or scrapped . . . not realizing they were not government-owned cylinders." *Id.*

In June 2007, the parties executed Amendment No. 6 to the BPO. *Derbidge Affidavit*, Ex. H (Docket No. 22-11). Amendment No. 6 extended Battelle's option to extend the

performance period under the contract for two months; changed the contract completion date from June 30, 2007 to August 31, 2007; and incorporated revised Attachments A and B. *Id.*

The BPO terminated on its own terms on August 31, 2007. *See Derbidge Affidavit*, ¶ 10 (Docket No. 22-3). When the BPO terminated, Battelle requested that USW return all DOE cylinders in its possession so that the DOE cylinders could be provided to Norco, Battelle's new compressed gas supplier. *Mason Sullivan Deposition*, 84:18-23 (Docket No.22-13). USW refused to relinquish control over some portion of the DOE cylinders, because they had been filled with compressed gas. *Travis Aldous Deposition*, 102:4-11 (Docket No. 22-14). Battelle refused to pay for this gas on the basis that it was not subject to a release. *Id.*

On December 18, 2008, USW filed the instant action asserting claims for breach of contract, unjust enrichment, conversion, reliance, and temporary restraining order/preliminary injunction. *Complaint* (Docket No. 1). According to USW, Battelle is required, either under tort or contract theories of liability, to pay for the gas prefilled in the DOE cylinders and for a large number of USW cylinders delivered to Battelle in the course of contract performance and not returned.

On February 20, 2009, Battelle filed an Answer, Counterclaim and Jury Demand (Docket No. 6). The Counterclaim includes three separate breach of contract actions: (1) failure to utilize government-owned cylinders; (2) failure to return government-owned cylinders; and (3) overcharging rent on USW cylinders. *Id.* Battelle also seeks injunctive relief requiring USW to return all DOE cylinders. *Id.*

## II. SUMMARY JUDGMENT STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id*. at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).

### III. ANALYSIS

Battelle has moved for summary judgment on all of Plaintiff's claims, except the breach of contract claim. *Defendant's Motion for Partial Summary Judgment* (Docket No. 22). According to Battelle, the parties' rights and duties are defined exclusively in the integrated BPO contract. In addition, Battelle has moved for judgment on two of its own breach of contract claims, specifically its claims that USW breached the parties' contract by failing to utilize government-owned cylinders during the course of contract performance and failing to return government-owned cylinders upon contract termination.

### A.      Analysis of USW's Non-Contract Claims

USW makes unjust enrichment and conversion claims against Battelle on the basis that it provided Battelle with USW cylinders during the course of contract performance and Battelle has not returned these cylinders to USW. *Complaint*, p. 7 (Docket No. 1). USW also makes a reliance claim, arguing that it pre-filled DOE cylinders with Battelle's knowledge in order to perform its obligations under the contract, and therefore should be compensated for the reasonable market and contract value of the gas product in those cylinders. *Id.* at pp. 10-11. As discussed more fully below, summary judgment is warranted on the unjust enrichment claim; however, there are material disputes of fact that preclude summary judgment on the conversion and reliance claims.

### 1.      Unjust Enrichment

"The substance of an action for unjust enrichment *lies in a promise, implied by law*, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter." *Great- Plains Equipment, Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 979 P.

**MEMORANDUM DECISION AND ORDER - 6**

2d 627 (1999) (italics in original) (quoting *Smith v. Smith*, 95 Idaho 477, 511 P.2d 294 (1973)). Unjust enrichment allows recovery where the defendant has received a benefit from the plaintiff that would be inequitable for the defendant to retain without compensating the plaintiff for the value of the benefit. *Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 557, 165 P.3d 261, 271 (2007). "[U]njust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Id.* at 558, 165 P.3d at 272 (citing *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88, 982 P.2d 917, 923 (1999). Unjust enrichment does not apply "where there is an enforceable express contract between the parties which covers the same subject matter." *Id.*

Battelle moves for summary judgment on Plaintiff's unjust enrichment claim on the basis that the parties have an express written contract. *Memorandum in Support of Summary Judgment*, p. 15 (Docket No. 22-1). In opposition, USW argues that the unjust enrichment claim should proceed, because the contract should be voided on the basis that it is procedurally and substantively unconscionable. *Responsive Brief*, pp. 4-5 (Docket No. 26).

As a preliminary matter, the undisputed facts reflect that the BPO speaks to "same subject matter" as the unjust enrichment claim. While there is no precisely-tailored provision in the BPO that directly speaks to the issue of the USW cylinders used during the contract and allegedly not returned, the contract does speak directly to the issue of industrial gas supplies, cylinder delivery and rental fees. Because there is an express contract dealing with the essential

subject matter of the relationship between the parties, a claim for unjust enrichment cannot apply unless the contract is otherwise unenforceable.[1]

USW argues that the BPO is unenforceable because it is unconscionable. Whether a contractual term is unconscionable is a question of law. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 192, 108 P.3d 332, 339 (2005). "For a contract or contractual provision to be voided as unconscionable, it must be both procedurally and substantively unconscionable." *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 42, 72 P.3d 877, 882 (2003) (citing *Walker v. American Cyanamid Co.*, 130 Idaho 824, 948 P.2d 1123 (1997)).

Procedural unconscionability relates to the bargaining process and is typically indicated by either lack of voluntariness or lack of knowledge:

> Lack of voluntariness can be shown by factors such as the use of high-pressure tactics, coercion, oppression or threats short of duress . . . or by great imbalance on the parties' bargaining power with the stronger party's terms being nonnegotiable and the weaker party being prevented by market factors, timing, or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all . . . . Lack of knowledge can be shown by lack of understanding regarding the contract terms arising from the use of inconspicuous print, ambiguous wording, or complex legalistic language . . . ; the lack of opportunity to study the contract and inquire about its terms . . . ; or disparity in the sophistication, knowledge, or experience of the parties . . . .

*Id.*

Substantive unconscionability relates to the terms of the agreement. "The contract or provision is substantively unconscionable if it is a bargain that no person in his or her senses and

---

[1] The dispute over the return of the cylinders is but one of a number of potential disputes that can worm into even the most carefully drawn contract. Were it not so, the size of this Court's docket and many other court dockets would be much smaller.

not under delusion would make on the one hand and that no honest and fair person would accept on the other." *Id.*

USW argues that the integrated BPO is procedurally unconscionable, because it is an adhesion contract, drafted on Battelle forms for Battelle's exclusive benefit and offered to USW on a take it or leave it basis. *Responsive Brief*, p. 5 (Docket No. 26). USW further argues that the integrated BPO is substantively unconscionable, because it is internally inconsistent in that USW could not both produce compressed gas on a timely basis and use DOE cylinders. *Id.*

The Court is not persuaded. USW's allegations do not establish the existence of an unconscionable agreement. First, USW is a sophisticated corporate entity, complete with in-house counsel, and obtained this procurement contract after voluntarily submitting a bid. This type of subcontract, for the main contractor operating a government facility such as the INL, is, unquestionably, a "plum" contract. Moreover, USW subsequently extended the duration of the contract performance period on several occasions. This is not a situation in which a powerless consumer is forced into a contract in order to obtain a necessary benefit. *Cf. Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 831 (S.D.N.Y. 1996) ("[T]ypical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it-basis."). Instead, USW, a sophisticated business entity, appears to have made a conscious and voluntary decision to enter a potentially lucrative contract with Bechtel, a large government contractor, no doubt with the belief that a significant profit could be made.

Second, an adhesion contract is not procedurally unconscionable solely because there was no bargaining over the terms. *Lovey*, 139 Idaho at 43, 72 P.2d at 883. To be unconscionable, the claimant must demonstrate that it was "prevented by market factors, timing,

or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Id.* Thus, it is not enough to argue that the contract terms were provided on a take it or leave it basis. Instead, there must be something more to suggest that the contract was entered in a manner that would suggest it was not a voluntary agreement.

In sum, the Court does not find that the contract should be voided on the basis that it is unconscionable. Accordingly, there is an enforceable contract between the parties which covers the same subject matter and Plaintiff's unjust enrichment claim fails as a matter of law.

> **2.    Conversion**

"Generally, conversion is defined as a distinct act of dominion wrongfully asserted over another's personal property in denial or inconsistent with rights therein." *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 743, 979 P.2d 605, 616 (1999). In 1933, the Idaho Supreme Court adopted the following definition of conversion:

> Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time. The act must be essentially tortious, but it is not essential to conversion sufficient to support the action of trover that the defendant should have complete manucaption of the property, or that he apply the property to his own use, if he has exercised dominion over it, in exclusion of, in defiance of, or inconsistent with the owner's right.

*Carver v. Ketchum*, 53 Idaho 595, 597, 26 P.2d 139, 141 (citing 26 R.C.L. 1098, § 3). In short, "conversion is a dealing by a person with chattels not belonging to him, in a manner inconsistent with the rights of the owner." *Id.*

**MEMORANDUM DECISION AND ORDER - 10**

"[T]o create liability for conversion it is not necessary that the actor intends to commit a trespass or a conversion." *See Wiseman v. Shaffer*, 115 Idaho 537, 541, 768 P.2d 800, 804 (Ct. App. 1989) (citing Restatement (Second) of Torts §§ 222, 223, and 224 (1965). "[W]here there has been a positive act of dominion over the property of another, if such act was unauthorized by the owner of the property, the intention of the defendant, his good or bad faith, his knowledge, or his mistake, however innocently and honestly made, are immaterial." *Carver v. Ketchum,* 53 Idaho at 597, 26 P.2d at 141.   In other words, conversion is a general intent tort. *In re Ormsby*, 591 F.3d 1199, 1205-06 (9th Cir. 2010) (stating that under Nevada law "conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge").  Thus, USW does not have to prove that Battelle intended to take USW cylinders; rather, it is sufficient if Battelle took some intentional act, i.e. acted purposefully, in a way that resulted in the exercise of dominion or control over the cylinders.[2]

Battelle argues that USW's allegations do not support a conversion claim, because they demonstrate "not that Battelle is withholding cylinders, but that somehow no one can account for what happened to these USW-owned cylinders." *Memorandum in Support of Defendant's Motion for Summary Judgment*, p. 16 (Docket No. 22-1).  More specifically, Battelle argues that the claim fails, because "[t]here is no evidence that Battelle intended to exercise dominion over USW's property." *Id.* at p. 17.

---

[2] "Conversion is always an intentional exercise of dominion or control over the chattel. Mere non-feasance or negligence, without such an intent, is not sufficient for conversion." Restatement (Second) of Torts § 223 cmt. b (1965). *Cf. LaPlace v. Briere*, 962 A.2d 1139, (N.J.Super. App. Div. 2009) (holding bailee will be liable for intentional or negligent conduct under conversion theory).

Summary judgment is inappropriate on this issue. Evidence in the record supports a reasonable inference that Battelle acted intentionally or purposefully, though unknowingly, and asserted ownership or control over the cylinders in a manner inconsistent with USW's ownership interests in the cylinders. Battelle regularly took possession of USW cylinders in a lawful manner pursuant to the BPO. In addition, Battelle's spreadsheets and USW's cylinder invoices and rental histories support a factual inference that Battelle received USW cylinders and did not return them upon demand. *See Affidavit of Mason Sullivan*, p. 5 (Docket No. 28). While these facts, alone, are not sufficient to create liability for conversion, there is additional evidence in the record that could support a reasonable inference that Battelle took intentional actions of dominion or control over the cylinders inconsistent with USW's ownership rights. For example, there is evidence suggesting that Battelle provided USW's cylinders to Norco and had "excessed" or scrapped USW's cylinders in the past. *See Jess Kirshner Deposition*, pp. 128:19-129:12, 129:21-130:2 (Docket No. 29-2), *Sandra Sargent Deposition,* Ex. SS2 ("Experience leads us to believe the INL either excessed or scrapped these cylinders, not realizing they were not government-owned cylinders"); *Derbidge Affidavit*, Ex. E (Docket No. 22-8).

Reading these facts in a light most favorable to USW, it is reasonable to conclude that at some point during Battelle's lawful possession of the cylinders, Battelle appropriated, used or asserted dominion and control over the USW cylinders in a manner inconsistent with USW's property rights to the cylinders. Whether such actions were taken knowingly is of no moment for purposes of the Court's decision on the pending motions--it is sufficient that there is evidence

in the record supporting an inference that Battelle took intentional actions with regard to the USW cylinders and such actions were inconsistent with USW's ownership interests.

### 3.     Reliance

USW argues that Battelle is obligated to pay for the gas placed in DOE cylinders in anticipation of Battelle's orders.  In the Complaint, USW refers to this theory of liability as a "reliance" claim and states "[b]y failing to purchase the product contained in the DOE cylinders in US Welding's possession *pursuant to the contracts and the course of conduct between the parties*, Battelle has caused US Welding to incur damages in an amount to be proved at trial. . . ."  *Complaint*, p. 11 (Docket No. 1).  Battelle interprets this "reliance" claim as one of promissory estoppel and argues that the claim fails because it was insufficiently pled and does not apply where, as here, there is a valid, enforceable contract addressing the same subject matter.

### a.     Sufficiency of the Pleading

Federal Rule of Civil Procedure ("FRCP") 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  While a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570.

Here, although the label to the claim is in some dispute and perhaps inartfully pled,

Battelle nonetheless had adequate notice of the particulars of the theory of liability. Indeed, it is

identified as promissory estoppel in the summary judgment motion, and both parties have

apparently agreed upon that particular template for the claim. Moreover, the Complaint contains

sufficient factual detail to identify this theory of liability.

### b. Sufficiency of the Promissory Estoppel Claim

Central to any promissory estoppel claim is proof of a promise. Under Idaho law,

promissory estoppel is described as:

> A promise which the promisor should reasonably expect to induce
> action or forebearance on the part of a promisee or a third person
> and which does induce such action or forebearance is binding if
> injustice can be avoided only by enforcement of the promise.
> RESTATEMENT (SECOND) OF CONTRACTS § 901(1)(1973).

*Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 67, 625 P.2d 417, 421 (1981). The elements

required to support such a claim are: "(1) one party's reliance on a promise creates a substantial

economic detriment, (2) the reliance was or should have been foreseeable, and (3) the reliance

was reasonable and justified." *Grover v. Wadsworth*, 147 Idaho 60, 205 P.3d 1196 (2009)

(citing *Gillespie v. Mountain Park Estates, L.L.C.*, 138 Idaho 27, 29, 56 P.3d 1277, 1279

(2002)). Promissory estoppel does not apply when there is a valid contract with regard to the

same subject matter. *Gillespie*, 138 Idaho at 30, 56 P.3d 1280.

Battelle argues for summary judgment on the basis that (1) nothing in the BPO permitted

USW to fill cylinders before receiving orders and charging Battelle for the gases not needed and

(2) promissory estoppel is not appropriate where, as here, there is a valid, enforceable contract.

*Memorandum in Support of Motion for Summary Judgment*, pp. 5, 10 (Docket No. 22-1). In

opposition, USW contends that the BPO is silent on the issue of prefilling DOE cylinders;

however, the parties modified the BPO by parol agreement and their course of conduct.

*Responsive Brief*, p. 9 (Docket No. 26).

> ### i.   The BPO is not Unambiguously Clear as to Which Party is Responsible for the Cost of the Prefilled Gas Located within the DOE Cylinders at the time of the Contract's Termination.

As a preliminary matter, the Court finds that the BPO is not entirely clear upon the issue here: i.e., payment for the compressed air prefilled in DOE cylinders.  Battelle relies upon three contractual provisions to support its argument that the contract forecloses USW's promissory estoppel claim.  First, Battelle argues that the contract requires USW to return the DOE cylinders upon contract termination.  *Memorandum in Support of Summary Judgment*, pp. 5-6 (Docket No. 22-1).  However, it is not clear that these provisions also apply to the industrial gases contained within the cylinders, in anticipation of future contract demands for gas from Battelle.  While it is clear that the title to the DOE cylinders "shall remain in the Government," BPO ¶ 3(c), it is again not clear that the parties reached an agreement as to what they would do about any compressed gases located within these government-owned cylinders upon contract termination.

Second, Battelle argues that the BPO outlines the parties' complete agreement regarding payment for the gas in the prefilled DOE cylinders.  *See Reply in Support of Summary Judgment*, p. 3 (Docket No. 30).

> In the event a follow-on BPO is awarded to other than the incumbent Subcontractor, the incumbent Subcontractor shall cooperate to the extent required to permit an orderly changeover to the successor Subcontractor without impact on [Battelle's] ability to continue day-to-day operations.  Supplies purchased by the incumbent Subcontractor, for the express purpose of servicing this BPO, may, at the option of the incumbent Subcontractor, be made available for sale to the successor Subcontractor.  In the event BPO termination is the cause of changeover, [Battelle] agrees to purchase any BPO items of special design, provided that the

> supplier received advanced written authorization from [Battelle] to
> stock the item(s) in a specified quantity(ies).

BPO, ¶ 4.9 (Docket No. 22-4). This argument fails, because it is not unambiguously clear that this provision relates to the issue of prefilled gas. The Court cannot determine, as a matter of law, that the prefilled gas falls within the category of supplies purchased for the express purpose of servicing the BPO, or that such gases are or are not items of special design subject to the written authorization requirement.[3]

Third, Battelle argues that several contractual provisions, read together, reflect that the price USW received for the cylinders subject to release orders constitutes the full consideration for USW's performance and USW alone was responsible for all costs necessary to meet the performance requirements of the contract. *See Reply in Support of Summary Judgment*, p. 4 (Docket No. 30). For example, the BPO states:

> (1) "[p]rices for all items shall include all transportation, packaging, and handling charges," BPO ¶ 5.1 (Docket No. 22-4);
>
> (2) USW shall "provide all resources, e.g., materials, labor, tooling, equipment and facilities, necessary to fulfill the requirements" of the BPO "at no additional cost" to the INL, *id.* at ¶ 2.1; and
>
> (3) USW was responsible "to maintain and adjust inventory levels such that the required performance level can be achieved" and "to maintain adequate inventory to meet the delivery requirements of the subcontractor," *id.* at ¶¶ 4.8, 6.9.

In short, Battelle argues that the BPO requires Battelle to pay only for those gases actually ordered and delivered. *Memorandum in Support of Summary Judgment*, p. 8 (Docket No. 22-1).

---

[3] If they are items of special design, and certainly there is much of what may be referred to as "specialized" gases in the record of this case, the BPO would call for Battelle to purchase such supplies upon termination, provided that USW can prove that it was authorized in writing to stock such supplies in advance.

Battelle argues that the BPO "does not contain any provision for payment for gases not ordered and not delivered and not needed by Battelle." *Id.*

However, the above provisions do not unambiguously address the issue at hand-- what to do with the compressed gas filled in anticipation of Battelle's release orders in order to meet the time deadlines set forth in the BPO. It is not clear that this gas is a cost akin to transportation, packaging, and handling costs, or a resource akin to materials, labor, tooling, equipment, and facilities. In addition, while USW was responsible for maintaining the inventory levels to meet the performance and delivery requirements of the BPO, there is nothing in this language to suggest that USW was also responsible for the cost of the gas prefilled to meet these requirements. It could also be reasonably inferred from this provision that Battelle would buy the gas products prefilled in the cylinders to meet these requirements. In short, the promissory estoppel claim is not barred by the express terms of the BPO.

### ii. Consideration for Promissory Estoppel or a Modified Agreement

Regardless of what the BPO required by its express terms, USW argues that the contract was modified by parol agreement and the parties' course of performance. Whether this alleged agreement is enforceable as a modification to the contract or is subject to promissory estoppel depends on whether there was adequate consideration.

"[C]ontract modification, like the formation of any contract, must be supported by valid consideration." *Great Plains Equipment, Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 770, 979 P.2d 627, 643 (1999). As the Idaho Supreme Court explains:

> It is well established "that a promise to do, or the doing of, what one is already bound by contract to do, is not valid consideration." *Dashnea v. Panhandle Lumber Co., Ltd*, 57 Idaho 232, 238, 64

**MEMORANDUM DECISION AND ORDER - 17**

P.2d 390, 393 (1937) (citing 1 WILLISTON ON CONTRACTS, §§ 130, 130A). Conversely, the doing by one of the parties of something that he is not legally bound to do constitutes consideration for the other's promise to modify the terms of the original agreement. *Dashnea*, 57 Idaho at 238, 64 P.2d at 393.

*Id.*[4]

In contrast, promissory estoppel is a substitute for consideration. *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 367-68, 109 P.3d 1104, 1109-1110 (2005). Promissory estoppel requires a promise to be enforced, and it cannot serve as "a substitute for an agreement between the parties." *Id.* at 367, 109 P.3d at 1109.

In other words, in order to establish an oral modification to the contract or promissory estoppel, USW must demonstrate that Battelle promised to pay for the prefilled gas. Whether this promise is enforceable under a breach of contract theory or a promissory estoppel theory depends upon whether there is adequate consideration.

According to USW, the fact of the parties' parol agreement is evidenced, in part, by USW's actual course of conduct, prefilling cylinders. In addition, USW points to evidence in the record from which one could reasonably infer that Battelle had knowledge of this course of conduct and assented to it. For example, in Contract No. 0051296, the parties' resolution of their 2006 cylinder accounting and tracking dispute, Battelle agreed to pay USW for prefilled gases in

---

[4] In addition, contract modification, like the formation of any contract, must reflect mutual assent. "One party to a written contract cannot alter the terms of the contract 'without the assent of the other [party] and . . . the minds of the parties must meet as to any proposed modification.'" *Great Plains Equipment, Inc. v. Northwest Pipeline Corp.*, 132 Idaho at 770, 979 P.2d at 643 (quoting *Ore-Ida Products, Inc. v. Larsen*, 83 Idaho 290, 296, 362 P.2d 384, 387 (1961)). The party asserting a parol modification must provide *clear and convincing* evidence of a modification by mutual assent. *Id.* (emphasis added). At the same time, given the difficulty of proving a parol modification, "[t]he fact of agreement may be implied from the acts of one party in accordance with the terms of a change proposed by the other." *Id.*

**MEMORANDUM DECISION AND ORDER - 18**

DOE cylinders, even though the gases were not subject to a release.  *See Sandra Sargent Deposition*, p.31:4-8 (Docket No. 29-1),  *Derbidge Affidavit*, Ex. E (Docket No. 22-8). Moreover, it is undisputed that USW had obligations under the BPO to meet Battelle's compressed gas requirements in a timely fashion and to use DOE cylinders first, prior to filling the orders with USW cylinders.  These obligations continued through the last day of the contract.

Reading these facts together and in a light most favorable to USW, it would be reasonable to conclude that the parties agreed that USW would prefill the DOE cylinders with gas and maintain a sufficient inventory of prefilled DOE cylinders in order to meet Battelle's expected delivery requirements.  Moreover, based on these same considerations, it would be reasonable to infer that Battelle promised to pay for the product prefilled in anticipation of its future orders upon contract termination.[5]  Accordingly, the Court cannot grant Battelle summary judgment on the issue of promissory estoppel.  The bottom line is that although after trial, the jury may agree with Battelle, in the context of summary judgment the Court must construe the record most favorably to the non-movant.  Here, when such inferences are drawn in favor of USW, the Court concludes that a reasonable juror could find that the parties agreed that, upon contract termination, that Battelle agreed to pay for the compressed gas prefilled in anticipation of future release orders.

---

[5]  In applying such an inference, the Court is not suggesting that the fact of such an inference is the same as a blank check for the benefit of USW.  Among other things, USW still has the burden of convincing the fact-finder of the particular circumstances that necessitated "prefilling," including the types of gases selected and the amount of cylinders prefilled for each type of gas.

**MEMORANDUM DECISION AND ORDER - 19**

### 4.    Injunctive Relief

In the Complaint, USW asserts claims for preliminary injunction or temporary restraining order.  However, separate motions in support of such action were not filed and Plaintiff has made no indication that it seeks to move forward with these claims.  Moreover, through these claims for injunctive relief, USW seeks to prevent Battelle or the DOE from recovering DOE cylinders in USW's possession.  As USW concedes, the parties have agreed that this will not occur and the DOE cylinders have, in fact, been returned.  Therefore, it appears that this claim (or claims) is moot and must be dismissed on this basis.

### B.    Battelle's Breach of Contract Claims

Battelle seeks summary judgment on two of its breach of contract counterclaims.  Specifically, Battelle wants the Court to determine, as a matter of law, that USW failed to utilize DOE cylinders during the course of performing its contractual obligations and then failed to return the DOE cylinders upon contract termination.

A contract must be construed to give effect to the intention of the parties. *Wing v. Martin*, 107 Idaho 267, 274, 688 P.2d 1172, 1178 (1984).  In determining the parties' intent, the contract must be viewed as a whole and considered in its entirety.  *Kessler v. Tortoise Development, Inc.*, 130 Idaho 105, 107, 937 P.2d 417, 419 (1997).  "If a contract's terms are clear and unambiguous, the contract's meaning and legal effect are questions of law, and the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words." *Taylor v. Just*, 138 Idaho 137, 140, 59 P.3d 308, 311 (2002)."  If a contract is reasonably subject to conflicting interpretation, then it is ambiguous, and its interpretation presents a question of fact which focuses upon the intent of the parties.  *Kessler*, 130 Idaho at 107, 937 P.2d at 419.

### 1.    Breach of Contract:  Utilization of DOE Cylinders

Battelle argues that USW is liable for "failing to utilize government-owned cylinders in a manner to avoid costs to [Battelle]." *Memorandum in Support fo Summary Judgment*, p. 11 (Docket No. 22-1).  Pursuant to the integrated BPO, DOE cylinders were provided to USW to assist in the performance of the contract.  The BPO also allowed USW to supply gas in USW cylinders.

It is undisputed that USW was obligated to use DOE cylinders first when possible in order to minimize Battelle's demurrage costs.[6]  In addition, the BPO requires USW to "maintain adequate property control records in accordance with sound industrial practice and shall make such records available for Contractor or Government inspection at all reasonable times." *See Derbidge Affidavit*, Ex. A, ¶ A.18(3)(d) (Docket No. 22-4).

At the very least, there is a genuine dispute of fact as to whether USW met its contractual obligation to use DOE cylinders.  First, USW has set forth evidence that its employees: (1) were instructed to use DOE cylinders before USW cylinders, s*ee Travis Aldous Deposition*, 164:18-165:10 (Docket No. 29-3); (2) preferred to use DOE cylinders, because they did not have to track the serial numbers on DOE cylinders but they were required to do so with the USW cylinders, *see id.* 107:10-19; and (3) only used USW cylinders when there were an insufficient number of DOE cylinders or when the DOE cylinders were not prepared for certain specialty gases, *see id.* 64:18-65:5; *Affidavit of Mason Sullivan*, p.8 (Docket No. 28).  These facts, read in a light most favorable to USW, support a reasonable conclusion that USW maximized its use of DOE cylinders.

---

[6]  Battelle contends that this requirement is expressly stated in the BPO, which states, "The subcontractor shall not be paid for any work performed or any costs incurred which reasonably could have been avoided."  *See Derbidge Affidavit*, Ex. A (Docket No. 22-4).

Second, it is not clear, as a matter of law, that USW's inventory system for managing DOE cylinders was deficient or somehow sidelined DOE cylinders. In fact, it is reasonable to infer from the facts that USW's system was an efficient way to address Battelle's contract requirements. USW filled DOE cylinders with whatever type of gas most recently placed in the cylinder. It is reasonable to infer that the types of gas cylinders being returned to USW are an indication of the types of gas Battelle would require in the future. Moreover, there is evidence in the record indicating that it was more costly and less efficient to change the cylinders from use for one type of gas to another. *Mason Sullivan* Affidavit, pp. 7-8 (Docket No. 28); *Mason Sullivan Deposition*, 75:19-76:13 (Docket No.).

These facts are sufficient to create a material issue of fact regarding USW's use of DOE cylinders. Accordingly, summary judgment is not appropriate on Battelle's first breach of contract claim.

### 2. Breach of Contract: Return of DOE Cylinders

Pursuant to the integrated BPO, USW was provided with DOE cylinders for the purpose of providing compressed gas to the INL. At the end of the BPO period, USW was charged with returning these cylinders, but the BPO says nothing about the gas located inside full cylinders.

The BPO states:

(1) "Title to Government property shall remain in the Government." BPO ¶ 3(c) (Docket No. 22-4).

(2) "The Subcontractor shall promptly take such action as the Contractor may direct regarding the removal, preparation for shipment, or disposal of the property covered by this notice." *Id.* at ¶ A.18(2)(a).

(3) "In the event a follow-on BPO is awarded to other than the incumbent Subcontractor, the incumbent Subcontractor shall cooperate to the extent required to permit an orderly changeover to the successor Subcontractor. . . ." *Id.* at ¶ 4.9.

(4) "Upon completion of this Subcontract . . . Subcontractor shall follow the instructions of Contractor regarding the disposition of all Government property not consumed in performing this subcontract or previously delivered to Contractor. Subcontractor shall prepare for shipment, delivery F.O.B. origin, or dispose of the Government property, as may be directed by Contractor. *Id.* at § A.18(7).

Battelle requested in writing that USW return the cylinders. *Sullivan Deposition*, 84-85, Ex. a *Richie Affidavit* (Docket No. ). There is no dispute that USW failed to return the DOE cylinders. *See Complaint*, p. (Docket No. 1). However, there is a dispute as to whether Battelle was obligated to pay for the gas placed within the DOE cylinders prior to contract termination under a breach of contract theory. *See Complaint*, p. 6 (Docket No. 1). This dispute precludes summary judgment on this issue.

## IV. CONCLUSION

In sum, Battelle is entitled to judgment against Plaintiff on the unjust enrichment claim. The parties have a valid, enforceable contract that speaks to the same subject matter; therefore, unjust enrichment does not apply.

In contrast, there are issues of fact that preclude summary judgment on Plaintiff's conversion and promissory estoppel claims and Defendant's contract claims. A reasonable jury could conclude either that the parties' obligations are laid out completely within the BPO or that the BPO does not adequately address the issues before the Court, *e.g.*: (1) responsibility for the cost of the gas USW had prefilled in DOE cylinders and (2) responsibility for the cost of USW's cylinders not returned upon contract termination. Moreover, even for those issues addressed in the BPO, it is not clear even from the undisputed facts that USW breached the BPO either by failing to adequately maintain its inventory of DOE cylinders or by failing to return the DOE cylinders that had been prefilled with gas. Accordingly, Defendant's motion for partial summary judgment must be denied in all other respects.

In addition, consistent with the Court's telephonic scheduling conference, this case is now ripe for referral to a settlement judge. Accordingly, this case is referred to Chief United States Magistrate Judge Candy W. Dale for the purpose of holding a settlement conference on or before October 1, 2010.

## V. ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 22) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the parties schedule a settlement conference with Chief United States Magistrate Judge Candy W. Dale on or before **October 1, 2010.**

DATED: **July 20, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge